IN THE UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

NML Capital, Ltd. et al,

        Plaintiffs-Appellees,

        v.

Republic of Argentina,

        Defendant-Appellant.

CIVIL ACTION NO. 12-105(L)

## **MOTION FOR LEAVE TO FILE AN *AMICUS* CURIAE BRIEF**

Pursuant to Federal Rule of Appellate Procedure 29(b), the Duane Morris Individual Plaintiffs, through their counsel, Duane Morris LLP, respectfully move for leave to file the attached *AMICUS CURIAE* BRIEF OF THE DUANE MORRIS INDIVIDUAL PLAINTIFFS. The Duane Morris Individual Plaintiffs, who were granted leave to file -- and filed --an *amicus* brief in support of Plaintiffs-Appellees in connection with the Republic of Argentina's ("Republic") appeal of the district court's orders of November 21, 2012 (the "Appeal"), asked all parties and intervenors whether they objected to the filing of an *amicus* brief. Counsel's April 17, 2013 letter sent to all counsel is attached to the Declaration of Suzan Jo as Exhibit A. As of the filing of this Motion, counsel for Plaintiff-

DM3\2517147.1

Appellees, NML Capital, Ltd., and the Aurelius funds; counsel for the Republic; and counsel for the Exchange Bondholders group object to the filing of the brief.

## STANDARD

A potential *amicus* may file as *amicus curiae* by leave of court when "the movant [has an] interest," the "amicus brief is desirable," and "the matters asserted are relevant to the disposition of the case." Fed. R. App. P. 29(b); *see, e.g., Hui Lin Huang v. Holder*, 677 F.3d 130, 133 (2d Cir. 2012). As discussed further below, all these factors are present here.

### 1. THE DUANE MORRIS INDIVIDUAL PLAINTIFFS HAVE AN INTEREST IN THIS CASE.

The Duane Morris Individual Plaintiffs were granted leave to file an *amicus* brief in connection with the Appeal. Thus, this Court has already recognized that the Duane Morris Individual Plaintiffs have an interest in this case.

To recapitulate, the Duane Morris Individual Plaintiffs are a group of various individual judgment creditors who hold bonds issued by the Republic of Argentina. These bonds are currently in default, and have been since 2001. The Duane Morris Individual Plaintiffs, who bought pursuant to the same 1994 Fiscal Agency Agreement ("FAA") at issue here, opted not to participate in the exchange offers made by Argentina in 2005 and 2010. Therefore, the Duane

Morris Individual Plaintiffs' rights were also violated by the exchange offers and the adoption of the Lock Law, and the outcome of this appeal will impact the Duane Morris Individual Plaintiffs. The Duane Morris Individual Plaintiffs have previously filed an *amicus* brief in this Appeal.

**2.  THE DUANE MORRIS INDIVIDUAL PLAINTIFFS' BRIEF IS DESIRABLE AND RELEVANT TO THE DISPOSITION OF THE CASE.**

This Court had already held that the Republic violated the *pari passu* clause of the 1994 FAA when it made payments to the Exchange Bondholders without a corresponding payments to the holdout bondholders and when it passed the Lock Law. *Id.* at 3. The only question is the determination of the appropriate scope of the remedy available for the Republic's violation.

Given the Republic's recalcitrant attitude, one may wonder why the Republic wastes this Court's time by submitting a proposal that purportedly mirrors the offers previously rejected by the holdouts. One may also wonder why the Republic continues to avail itself of the protections of our courts, all the while publicly stating that: it has no intention of complying with orders of the Court with which it disagrees; and as recently as March 31, 2013, reiterating its

disdain for our courts by restating its intention to pay Exchange Bondholders "no matter what[.]"[1]

In its post-argument Order of March 1, this Court directed the Republic to "submit in writing to the court the precise terms of any alternative payment formula and schedule to which it is prepared to commit." *See NML Capital Ltd. v. Republic of Argentina*, Docket No. 12-105(L), Dkt. # 903, at 1 (2d Cir. Mar. 1, 2013). Specifically, the Court directed the Republic to indicate:

> (1) how and when it proposes to make current those debt obligations on the original bonds that have gone unpaid over the last 11 years; (2) the rate at which it proposes to repay debt obligations on the original bonds going forward; and (3) what assurances, if any, it can provide that the official government action necessary to implement its proposal will be taken, and the timetable for such action. *Id.* at 2.

In response, the Republic submitted a response that simply mimicked its 2005 and 2010 debt exchanges, which the holdout bondholders have already rejected.

The Duane Morris Individual Plaintiffs seek to file their *amicus* brief in order to aid the Court in its evaluation of the Republic's proposal. In this regard, the *amicus* brief analyzes several fatal flaws in the Republic's proposal

---

[1] See Declaration of Suzan Jo, dated April 22, 2013 (hereinafter "Jo Decl."), Ex. B (Katia Porzecanski, *New York-for-Buenos Aires Swap Theory Spreads: Argentina Credit*, BLOOMBERG NEWS, Apr. 03, 2013, *available at* http://www.bloomberg.com/news/print/2013-04-03/new-york-for-buenos-aires-swap-theory-spreads-argentina-credit.html).

and also sets forth factors for the Court's consideration in determining an appropriate remedy for the violation of the *pari passu* clause.

### A. The Republic's Proposal On How It Would Make The Holdout Bondholders Whole on The Past Due Interest Is Flawed.

In its March 1 Order, the Court's first question to the Republic was "how and when it proposes to make current" its past debt obligations. In its proposal, the Republic simply ignores this part of the Court's directive: it says that it will pay nothing on account of interest that accrued during the first two years (2001-2003) after the Republic's default. *See NML Capital Ltd. v. Republic of Argentina,* Docket No. 12-105(L), Dkt. # 935 (2d Cir. Mar. 29, 2013). As to the remaining years, the Republic states that it will not "make current those debt obligations on the original bonds that have gone unpaid over the last 11 years." *Id.* at 1, 3-4 (emphasis added). Instead, the Republic says it will pay interest to the holdouts at rates specified in the Exchange Bonds, not the original Bonds. *Id.*

The Republic's proposal sets forth two "Options" for the holdout bondholders: the "Par Option" and the "Discount Option." *Id.* at 2-4. To further dilute the attractiveness of its proposal, the Republic limits the Par Option to $50,000 per series, despite its recognition that "[T]he Par option is designed for

individual

bondholders . . . ."[2] *Id.* at 3.  Moreover, this Par Option offer is limited to paying interest only for the period during which the current holder actually held the bonds: this additional limitation allows the Republic to (a) "self-forgive" its obligation to pay some accrued payment, and (b) ignore the Court's directive that the Republic explain how interest would be paid on the *original bonds*.  In short, the Republic has ignored this Court's March 1 Order by taking the position that it will only make a lump-sum payment of a small fraction of indebtedness accumulated during eleven years of unilaterally-imposed non-payment.[3]  This deficiency is reason enough to reject the Republic's Proposal.

The Republic explains that its proposal, with respect to the past due payments, matches the amounts paid to the Exchange Bondholders. *Id.* at 4-5,

---

[2]     Individual bondholders who have more than $50,000 in "Eligible Amount" (a category including many retirees) would be forced to take the "Discount Option," further reducing the lump-sum cash payments made available to the holdouts.  As a consequence, the $50,000 limitation would deprive many retirees of a significant cash payment they badly need.

[3]     The scope of the Republic's proposal is limited to the plaintiffs in this action (who are a sub-set of the holdouts).  This Court specifically directed that the Proposal address all the holdout bonds, and this directive was ignored as well.

6

7-8, 11, 13, 15. Since it purports to treat all bondholders equally, the Republic reasons that the *pari passu* requirement will be fulfilled.

Given not only the Republic's violations of the *pari passu* clause, but also its dogged long-term defiance of the courts of the United States, there is no reason why any retroactive remedy should be limited by terms to which the Exchange Bondholders have agreed. Retroactively, the only sensible resolution is a lump-sum payment of *all* interest and principal that has accrued and become due and payable in eleven years to *all* the current holders of the holdout bonds (hereinafter, the "Accrued Payment Component"). Such a payment would be directed through an order for specific performance, which this Court has endorsed as the appropriate remedial device. *NML Capital Ltd.*, 699 F.3d at 261-262.[4]

        B.    The Republic's Proposal On The Treatment Of Its Future Obligation Is Also Flawed.

Argentina also ignored the Court's second inquiry, *i.e.,* "the rate at which [the Republic] proposes to repay debt obligations on the original bonds going forward." The Court directed the Republic to specify "the rate at which it proposes to repay debt obligations on the original bonds going forward." *See*

---

[4] The Republic may fear that a voluntary payment exceeding the amount paid to the Exchange Bondholders would trigger other litigation by the Exchange Bondholders. An involuntary payment ordered by the courts would not.

7

7-8, 11, 13, 15. Since it purports to treat all bondholders equally, the Republic reasons that the *pari passu* requirement will be fulfilled.

Given not only the Republic's violations of the *pari passu* clause, but also its dogged long-term defiance of the courts of the United States, there is no reason why any retroactive remedy should be limited by terms to which the Exchange Bondholders have agreed. Retroactively, the only sensible resolution is a lump-sum payment of *all* interest and principal that has accrued and become due and payable in eleven years to *all* the current holders of the holdout bonds (hereinafter, the "Accrued Payment Component"). Such a payment would be directed through an order for specific performance, which this Court has endorsed as the appropriate remedial device. *NML Capital Ltd.*, 699 F.3d at 261-262.[4]

    B.    The Republic's Proposal On The Treatment Of Its Future Obligation Is Also Flawed.

Argentina also ignored the Court's second inquiry, *i.e.,* "the rate at which [the Republic] proposes to repay debt obligations on the original bonds going forward." The Court directed the Republic to specify "the rate at which it proposes to repay debt obligations on the original bonds going forward." *See*

---

[4] The Republic may fear that a voluntary payment exceeding the amount paid to the Exchange Bondholders would trigger other litigation by the Exchange Bondholders. An involuntary payment ordered by the courts would not.

*NML Capital Ltd.,* Dkt. # 903, at 2.  This Court's acceptance of Argentina's proposal would do nothing more than cancel the original bonds and force the Exchange bonds on all the holdouts, who would be effectively subjected to a judicial cram-down.  This portion of the Republic's proposal ignores the fact that this Court specifically recognized the right of individual holders to reject the Republic's penny-ante exchange offers.[5]

With respect to the Accrued Payment Component, the Republic should be ordered that immediately.  With respect to the future component, the Proposal is not responsive to the Court's request, and should be rejected.

---

[5]  Argentina's flagrant disregard of U.S. courts has not gone unnoticed.  The Institute of International Finance (IIF), which is comprised of the major banks of the world, has remarked that "Argentina finds itself in this complicated situation by its own behavior, evidenced by more than a decade of unilateral treatment of its creditors."  *See* Jo Decl., Ex. C (Mariana Shaalo, *Argentina vs. Holdouts: Moody's Minimizes Impact of Litigation with Vultures and Recalls that the Swap was Unilateral and Coercive*, AMERICAN TASK FORCE ARGENTINA, Apr. 10, 2013, *available at* http://www.atfa.org/argentina-vs-holdouts-moodys-minimizes-impact-of-litigation-with-vultures-and-recalls-that-the-swap-was-unilateral-and-coercive/).  The IIF also commented that the determination of the remedy "should be done carefully to not condone the unilateral actions by a sovereign debtor and weaken the rights of subsequent creditors, especially the right to demand reparations in court."  *See* Jo Decl., Ex. D (Veronica Dalto*, Global Bankers Warn About The Risk of Pardoning Argentina,* AMERICAN TASK FORCE ARGENTINA, Apr. 5, 2013, *available at* http://www.atfa.org/global-bankers-warn-about-the-risk-of-pardoning-argentina/).

### C. The Republic's Did Not Even Attempt In Good Faith To Respond To The Court's Third Inquiry.

On this Court's final question, "what assurances, if any, [the Republic] can provide that the official government action necessary to implement its proposal will be taken, and the timetable for such action," (*NML Capital Ltd.*, Dkt. # 903, at 2) the Republic devotes a three-sentence paragraph in which it mouths principles of democratic government (*NML Capital Ltd.*, Dkt. # 935, at 2). The Republic appears to be avoiding a direct answer here as well, and its virtual disregard of the "timetable" requirement is remarkable. The holdouts, and this Court, are entitled to a much more considered response after eleven years of contentious litigation and outright evasion by the Republic.

In short, the Republic has ignored or evaded each one of this Court's requirements. There is no real choice but to reject the proposal. The question is the extent, if any, that the district court's order should be modified.

## CONCLUSION

Based upon the foregoing, the Duane Morris Individual Plaintiffs respectfully requests that the Court grant it leave to file the *AMICUS CURIAE BRIEF OF THE DUANE MORRIS INDIVIDUAL PLAINTIFFS*.

**[SIGNATURES ON FOLLOWING PAGE]**

DUANE MORRIS LLP

/s/Anthony J. Costantini
Anthony J. Costantini
ajcostantini@duanemorris.com
Rudolph J. Di Massa, Jr.
DiMassa@duanemorris.com
Suzan Jo
sjo@duanemorris.com
Mary C. Pennisi
mcpennisi@duanemorris.com
1540 Broadway
New York, NY 10036-4086
Telephone: +1 212 692 1000
Fax: +1 212 692 1020

*Counsel for Duane Morris Individual Plaintiffs*

Dated: April 22, 2013