# IN THE UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

| | |
|---|---|
| NML CAPITAL, LTD., AURELIUS CAPITAL MASTER, LTD., ACP MASTER, LTD., BLUE ANGEL CAPITAL I LLC, AURELIUS OPPORTUNITIES FUND II, LLC, PABLO ALBERTO VARELA, LILA INES BURGUENO, MIRTA SUSANA DIEGUEZ, MARIA EVANGELINA CARBALLO, LEANDRO DANIEL POMILIO, SUSANA AZQUERRETA, CARMEN IRMA LAVORATO, CESAR RUBEN VAZQUEZ, NORMA HAYDEE GINES, MARTA AZUCENA VAZQUEZ, OLIFANT FUND, LTD., <br><br> *Plaintiffs-Appellees*, <br><br> v. <br><br> THE REPUBLIC OF ARGENTINA, <br><br> *Defendant-Appellant,* <br><br> THE BANK OF NEW YORK MELLON, AS INDENTURE TRUSTEE, EXCHANGE BONDHOLDER GROUP, FINTECH ADVISORY INC., <br><br> *Non-Party Appellants*, <br><br> EURO BONDHOLDERS, ICE CANYON LLC, <br><br> *Intervenors.* | Nos. 12-105 (L), 12-109-cv (CON), 12-111-cv (CON), 12-157-cv (CON), 12-158-cv (CON), 12-163-cv (CON), 12-164-cv (CON), 12-170-cv (CON), 12-176-cv (CON), 12-185-cv (CON), 12-189-cv (CON), 12-214-cv (CON), 12-909-cv (CON), 12-914-cv (CON), 12-916-cv (CON), 12-919-cv (CON), 12-920-cv (CON), 12-923-cv (CON), 12-924-cv (CON), 12-926-cv (CON), 12-939-cv (CON), 12-943-cv (CON), 12-951-cv (CON), 12-968-cv (CON), 12-971-cv (CON), 12-4694-cv (CON), 12-4829-cv (CON), 12-4865-cv (CON) |

**FINTECH ADVISORY INC.'S
OPPOSITION TO APPELLEES' MOTION TO VACATE THE STAY**

# **TABLE OF CONTENTS**

**PAGE**

PRELIMINARY STATEMENT ..................................................................1

ARGUMENT ..............................................................................................3

    I.    Appellees Have Failed to Demonstrate That This Court Should Vacate the Stay ...................................................................4

        A.    The Republic and Non-Parties Would be Irreparably Harmed In the Absence of a Stay ............................................4

        B.    Appellees Have Not Demonstrated Irreparable Harm ...............6

        C.    Principles of Foreign Policy and International Comity Call for Maintenance of the Stay .......................................7

        D.    The Republic's Alleged Bad Faith is No Basis for This Court to Vacate the Stay ...................................................8

    II.    The Stay Should Remain in Effect While The Supreme Court Determines Whether it Will Address The Substantial Constitutional Issues Raised by the Injunction............................................................9

CONCLUSION ........................................................................................12

# **TABLE OF AUTHORITIES**

**CASES**                                                                                                              **PAGE(S)**

*Amado v. Microsoft Corp.*,
    SA CV 03-242 DOC ANX
    2008 WL 8641264 (C.D. Cal. Dec. 4, 2008) ..................................................6

*Amos v. PPG Indus., Inc.*,
    699 F.3d 448 (6th Cir. 2012), *cert. den.*, 133 S. Ct. 2008 (2013) .................9

*Apostol v. Gallion*,
    870 F.2d 1335 (7th Cir. 1989) ......................................................................7

*Ascom Hasler Mailing Sys., Inc. v. U.S. Postal Serv.*,
    815 F. Supp. 2d 148 (D.D.C. 2011) ............................................................11

*Barnes v. E-Sys., Inc. Grp. Hosp. Med. & Surgical Ins. Plan*,
    501 U.S. 1301, 112 S. Ct. 1, 115 L. Ed. 2d 1087 (1991) ...............................4

*Blinco v. Green Tree Serv., LLC*,
    366 F.3d 1249 (11th Cir. 2004) ....................................................................7

*Capital Ventures Int'l v. Republic of Argentina*,
    282 F. App'x 41 (2d Cir. 2008) ................................................................5, 8

*Chan v. Reno*,
    991 F. Supp. 266 (S.D.N.Y. 1998) ...............................................................3

*Christianson v. Colt Indus. Operating Corp.*,
    486 U.S. 800 (1988) .....................................................................................3

*Cienega Gardens v. United States*,
    331 F.3d 1319 (Fed. Cir. 2003) ..................................................................11

*Ecolab, Inc. v. Paolo*,
    753 F. Supp. 1100 (E.D.N.Y. 1991) .............................................................5

*E.I. DuPont de Nemours & Co. v. Phillips Petroleum Co.*,
    835 F.2d 277 (Fed. Cir. 1987) ......................................................................5

*Fletcher Aircraft Co. v. Bond*,
    77 F.R.D. 47 (C.D. Cal. 1977) ...................................................................................9

*Goshtasby v. Bd. of Trustees of Univ. of Illinois*,
    123 F.3d 427 (7th Cir. 1997) .....................................................................................7

*Hanson v. Denckla*,
    357 U.S. 235 (1958) ................................................................................................10

*Hilton v. Guyot*,
    159 U.S. 113 (1895) ..................................................................................................7

*Ledbetter v. Baldwin*,
    479 U.S. 1309, 107 S. Ct. 635, 93 L. Ed. 2d 689 (1986) .........................................4

*Lynch v. United States*,
    292 U.S. 571, 54 S. Ct. 840, 78 L. Ed. 1434 (1934) ..............................................11

*NLRB v. Doug Neal Mgmt. Co.*,
    620 F.2d 1133 (6th Cir. 1980) ...................................................................................9

*NML Capital, Ltd. v. Republic of Argentina*,
    727 F.3d 230 (2d Cir. 2013) ......................................................................................1

*Panama Canal Co. v. Grace Line*,
    77 S. Ct. 854 (1957) ..................................................................................................7

*Philip Morris USA Inc. v. Scott*,
    131 S. Ct. 1, 177 L. Ed. 2d 1040 (2010) ...................................................................4

*Stop the Beach Renourishment, Inc. v. Florida Dept. of Envtl. Protection*,
    130 S. Ct. 2592 (2010) ............................................................................................10

*Times-Picayune Publishing Corp. v. Schulingkamp,*
    419 U.S. 1301, 95 S. Ct. 1, 42 L. Ed. 2d 17 (1974) ..................................................4

*Torres v. $36,256.80 U.S. Currency*,
    25 F.3d 1154 (2d Cir. 1994) ......................................................................................9

*United States v. Coluccio*,
    51 F.3d 337 (2d Cir. 1995) ...........................................................................11

*Vasquez v. Rackauckas*, SACV 09-1090 VBF,
    2011 WL 1791091 (C.D. Cal. May 10, 2011) ...............................................10

*Zenith Radio Corp. v. Hazeltine Research, Inc.*,
    395 U.S. 100 (1969) ....................................................................................10

## **SECONDARY SOURCES**

William F. Fratcher, *Scott on Trust*, § 12.1 (4th ed. 1987) .......................................11

Previously designated non-party appellant Fintech Advisory Inc. ("Fintech") submits this brief in response to Appellees' Motion to Vacate the Stay, dated October 15, 2013 (the "Motion").

## PRELIMINARY STATEMENT

Appellees' Motion to vacate the stay set out in this Court's August 23, 2013 ruling (the "August 23 Ruling") should be denied. Simply, Appellees have presented no basis for this Court to reverse its prior, and undoubtedly carefully considered, decision to extend the stay of the affirmed District Court injunctions until "the resolution by the Supreme Court of a timely petition for a writ of *certiorari*" from the August 23 Ruling. *NML Capital, Ltd. v. Republic of Argentina*, 727 F.3d 230, 248 (2d Cir. 2013). Appellees primarily base their Motion on statements made by the President of the Republic of Argentina (the "Republic") nearly two months ago that Appellees assert demonstrate an effort to violate the "Anti-Evasion" Order previously entered by the District Court on March 5, 2012 [Docket No. 372]. Putting aside Appellees' self-serving interpretation of the statements, Appellees cannot rely upon the statements for relief given (i) the Republic's acknowledgement that the Anti-Evasion Order applies through the time that the United States Supreme Court disposes of this matter; and (ii) Judge Griesa's ruling of October 3, 2013 which confirmed the application of the Anti-Evasion Order to the conduct ascribed as having been

contemplated by the Republic [Docket Nos. 486-87]. As such, Appellees' primary argument is based upon mere speculation and hyperbole, and it fails.

Appellees' other argument that the stay should be lifted because *certiorari* was denied on the Republic's previously filed petition for *certiorari* deserves little mention. Obviously, when this Court determined that the injunctions would be stayed "pending the resolution by the Supreme Court of a timely petition for a writ of *certiorari*," (August 23 Ruling, 727 F.3d at 248), it understood that the then-pending petition may be denied prior to consideration of a petition from the August 23 Ruling. Thus, the denial of the earlier-filed petition is not a "new event" upon which to reconsider the stay.

Moreover, vacatur of the stay could irreparably harm the Republic as well as the holders of the 2005 and 2010 bonds issued by the Republic under the Indenture (the "Exchange Bonds"), which includes Fintech (the "Exchange Bondholders"). If the stay is vacated, billions of dollars could flow to Appellees, in addition to hundreds or thousands of other bondholders worldwide, an egg that cannot be unscrambled if the Supreme Court rules differently. Alternatively, the Republic could default on the Exchange Bonds in lieu of paying Appellees. In either scenario, the courts could be confronted with scores of lawsuits, all of which could have been averted if the stay had been maintained.

Finally, the Exchange Bondholders including Fintech have raised and will raise again significant constitutional issues arising from the orders affirmed by the August 23 Ruling, and the Supreme Court should be given the opportunity to address such issues should it choose to do so. For the foregoing reasons and those set out in greater detail below, this Court should deny the Motion.

## ARGUMENT

"[A]s a rule courts should be loathe to [revisit prior decisions of its own] in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would work a manifest injustice." *Christianson v. Colt Indus. Operating Corp*., 486 U.S. 800, 817 (1988) (internal citation and quotation omitted); *see also, Chan v. Reno*, 991 F. Supp. 266, 272 (S.D.N.Y. 1998) (noting that the "law of the case" doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case") (internal citation and quotation omitted).

Appellees have presented no reason to vacate this Court's earlier judgment imposing a brief stay to enable the United States Supreme Court to hear and decide this case after this Court's August 23 Ruling if it so chooses.

## I. Appellees Have Failed to Demonstrate That This Court Should Vacate the Stay

### A. The Republic and Non-Parties Would Be Irreparably Harmed in the Absence of a Stay

Appellees' irreparable injury argument is fatally flawed. Their argument rests almost entirely upon the contention that in the absence of a stay the Republic would suffer no harm because it would merely be forced to comply with the contractual obligations it owes to the Appellees. Motion at 14. This is the wrong analysis. In assessing the likelihood of irreparable harm, Appellees must assume that the Republic's position is correct. *See Barnes v. E-Sys., Inc. Grp. Hosp. Med. & Surgical Ins. Plan*, 501 U.S. 1301, 1302, 112 S. Ct. 1, 2, 115 L. Ed. 2d 1087 (1991) (Scalia, J.) ("likelihood of irreparable harm (assuming the correctness of the applicant's position) if the judgment is not stayed") (citing *Times-Picayune Publishing Corp. v. Schulingkamp,* 419 U.S. 1301, 1305, 95 S. Ct. 1, 4, 42 L.Ed.2d 17 (1974) (Powell, J., in chambers)). If the Republic's position is correct, then it would suffer irreparable harm from the expenditure of billions of dollars it would owe Appellees under the bonds they hold with the improbable likelihood of recouping such funds if the Supreme Court rules differently. *See, e.g.*, *Philip Morris USA Inc. v. Scott*, 131 S. Ct. 1, 4, 177 L.Ed.2d 1040 (2010) (Scalia, J.) (irrevocable harm where $270 million would be "irrevocably expended"); *Ledbetter v. Baldwin*, 479 U.S. 1309, 1310, 107 S. Ct. 635, 636, 93 L. Ed. 2d 689

4

(1986) (Powell, J) (irreparable harm from administrative costs that might not be recoverable even if district court order were reversed).

In addition, third parties such as the Exchange Bondholders would be harmed. In the event the Republic determines to default on the Exchange Bonds rather than pay Appellees, this would result in a taking of the Exchange Bondholders' property. The primary recourse afforded to the Exchange Bondholders if they are not paid by the Republic would be to commence litigation to enforce the contractual rights they are owed under separate agreements with the Republic. Such threat of multiple litigations is a reality that is not even addressed by Appellees, and it alone is a sufficient reason to continue the stay. *See Ecolab, Inc. v. Paolo*, 753 F. Supp. 1100, 1110 (E.D.N.Y. 1991) ("if we were not to grant an injunction, Ecolab would be required to seek damages in many separate actions based upon each separate disclosure of the customer information"); *Capital Ventures Int'l v. Republic of Argentina*, 282 F. App'x 41, 42 (2d Cir. 2008) (instructing the Court to "take care to craft [] orders so as to avoid interrupting Argentina's regular payments to bondholders").

In such circumstances, courts have not hesitated to grant a stay pending an appeal to protect the rights of third parties. *See, e.g., E.I. DuPont de Nemours & Co. v. Phillips Petroleum Co.*, 835 F.2d 277, 278-79 (Fed. Cir. 1987) (granting stay pending appeal based in part on arguments of amici third-party licensors who

5

would suffer irreparable injury if stay had not been granted); *Amado v Microsoft Corp.*, SA CV 03-242 DOC ANX, 2008 WL 8641264, at *9 (C.D. Cal. Dec. 4, 2008) (granting stay pending appeal due to possibility of disruption in the sale of Microsoft products because "the loss of goodwill to Microsoft *and third parties* would likely be significant absent a stay") (emphasis added). Similarly, the stay should remain in place here.

### B. Appellees Have Not Demonstrated Irreparable Harm

Appellees' position with respect to the irreparable harm it would suffer is entirely speculative and without basis. Indeed, Appellees cannot decide whether the "evasive scheme" which they profess to fear already has occurred, Motion at 12, or whether it will be "hatched" during a continued stay. Motion at 15-16.

Appellees have not pointed to a single "financial institution" or "sophisticated investor" which has subscribed to the alleged "scheme" even though, according to Appellees, the success of the scheme requires the participation of "numerous financial institutions and sophisticated investors." Motion at 15. Moreover, Judge Griesa has entered a prophylactic order to address the alleged "evasion." Docket No. 487. At this point, Appellees are conjuring up a scenario for which it has no facts. Finally, Appellees have not shown that they would have no remedy if the alleged "evasion" occurred.

### C. Principles of Foreign Policy and International Comity Call for Maintenance of the Stay

When difficult questions of foreign policy are implicated, as they are here, the federal Courts of Appeal have permitted a stay to allow underlying litigation to be completed before altering the status quo. *See, e.g., Blinco v. Green Tree Serv., LLC*, 366 F.3d 1249, 1252 (11th Cir. 2004) (district court properly stayed litigation, including discovery, pending appeal of a denial of sovereign immunity); *Apostol v. Gallion*, 870 F.2d 1335, 1339 (7th Cir. 1989) (district court must stay proceedings on appeal asserting claim to immunity from damages); *Goshtasby v. Bd. of Trustees of Univ. of Illinois*, 123 F.3d 427, 428 (7th Cir. 1997) (appeal regarding Eleventh Amendment immunity was not frivolous and proceedings in district court would be stayed pending resolution on the merits).

In addition, principles of international comity also require this result. *See Hilton v. Guyot*, 159 U.S. 113, 163-65 (1895) ("the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation . . . [it] contributes so largely to promote justice between individuals, and to produce a friendly intercourse between the sovereignties to which they belong, that courts of justice have continually acted upon it as a part of the voluntary law of nations"). As Justice Harlan wrote *in Panama Canal Co. v. Grace Line*, 77 S. Ct. 854, 855 (1957):

7

[T]he fixing of such tolls is not alone a commercial undertaking, but also one that involves this country's relations with the foreign governments whose nationals are users of the Canal. I am constrained to accept the Government's representations that the uncertainties and confusion which might ensue from requiring the Panama Canal Company to proceed before this litigation is over might embarrass our relations with such foreign governments. And because of the peculiar position occupied by the Panama Canal Company as a political instrumentality, it seems to me that it should not be required to go forward under the Court of Appeals' decision until the issues in this controversy are settled.

### D. The Republic's Alleged Bad Faith is No Basis for This Court to Vacate the Stay

In support of the "extraordinary" circumstances upon which Appellees seek to vacate the stay, Appellees point largely to Bloomberg News and Los Angeles Times articles, which contain blanket conclusions as to the Republic's purported intentions to circumvent the injunctions. Such hearsay articles are entitled to little, if any, weight. *See, e.g.*, *Capital Ventures Int'l*, 282 F. App'x at 42 (holding that this Court "properly denied CVI's motion for an injunction" where CVI's claim of imminent harm was based on a mere "assertion"). Notably, Appellees waited two months to act statements by the Republic's President, which were later undermined by the submission by the Republic and Judge Griesa's subsequent order confirming the application of the Anti-Evasion Order [Docket No. 487].

8

## II. The Stay Should Remain in Effect While The Supreme Court Determines Whether it Will Address The Substantial Constitutional Issues Raised by the Injunction

In addressing whether the Supreme Court is likely to accept the Republic's arguments, Appellees fail to address any of the points raised by the Exchange Bondholders. These arguments present substantial constitutional issues and, standing alone, warrant the continuation of the stay pending the Republic's writ of *certiorari*.

Several federal Courts of Appeal have noted that "the Supreme Court is a stickler about the due process rights of non-parties to litigation." *See, e.g., Amos v. PPG Indus., Inc.*, 699 F.3d 448, 453 (6th Cir. 2012), *cert. den.*, 133 S. Ct. 2008 (2013). Because these issues have been raised by the Exchange Bondholders, the stay should remain in effect. *See NLRB v. Doug Neal Mgmt. Co.*, 620 F.2d 1133, 1139 (6th Cir. 1980) ("It is not necessary that an absent person would be bound by the judgment in a technical sense. It is enough that as a practical matter his rights will be affected.") (internal quotation and citation omitted); *Torres v. $36,256.80 U.S. Currency*, 25 F.3d 1154, 1160 (2d Cir. 1994) (undisclosed beneficiary to constructive trust was entitled to have adequate notice sent to trustee that was listed in the bank's records). *See also, Fletcher Aircraft Co. v. Bond*, 77 F.R.D. 47, 52 (C.D. Cal. 1977) ("It is a firmly established procedural maxim that a judgment which substantially affects the rights of a party who is not joined violates due

process") (citing *Hanson v. Denckla*, 357 U.S. 235, 254-5 (1958)). "There is no reason that the application of injunctions to non-parties should be categorically exempted from due process scrutiny." *Vasquez v. Rackauckas*, SACV 09-1090 VBF, 2011 WL 1791091, at *13 (C.D. Cal. May 10, 2011) (citing *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100 (1969)).

As the Exchange Bondholders have argued before this Court and the Supreme Court, the November 21, 2012 orders by the District Court, which were affirmed by this Court's August 23 Ruling, violate the constitutional rights of the Exchange Bondholders.[1] The use of the Exchange Bondholders' property for the benefit of Appellees violates the Due Process Clause. Indeed, four justices of the Supreme Court would recognize a compensable taking whenever "a court declares that what was once an established right of private property no longer exists." *Stop the Beach Renourishment, Inc. v. Florida Dept. of Envtl. Protection*, 130 S. Ct. 2592, 2602 (2010).

---

[1] Notably, Appellees do not address any of the arguments presented in Fintech's Petition for Rehearing *En Banc*, dated September 6, 2013. At minimum, the constitutional arguments present questions that the Supreme Court should consider, meaning that a stay of the litigation is warranted. *See Corpus Christi Independent School Dist. v. Cisneros*, 404 U.S. 1211, 92 S. Ct. 9, 30 L. Ed. 2d 15 (1971) (opinion of Circuit Justice Black) (when a school-desegregation case presented questions not previously passed on by the full Supreme Court, but that should be, stay of a district court order that the court of appeals had vacated would be reinstated).

Here, the Exchange Bondholders' rights and expectations under their valid contracts with the Republic are "property" protected by the Fifth Amendment. *See Ascom Hasler Mailing Sys., Inc. v. U.S. Postal Serv.*, 815 F. Supp. 2d 148, 173-76 (D.D.C. 2011) (citing *Cienega Gardens v. United States*, 331 F.3d 1319, 1330 (Fed. Cir. 2003) (quoting *Lynch v. United States*, 292 U.S. 571, 579, 54 S. Ct. 840, 78 L. Ed. 1434 (1934) ("The Fifth Amendment commands that property be not taken without making just compensation. Valid contracts are property, whether the obligor be a private individual, a municipality, a State or the United States.")).[2]

Accordingly, for all of the foregoing reasons, the stay imposed by this Court should remain in effect as set out in the August 23 Ruling.

---

[2] The Exchange Bondholders, including Fintech, are beneficial owners which hold equitable title to the Trust assets and are the "real owners" of the Trust property. *See, e.g.*, *United States v. Coluccio*, 51 F.3d 337, 341-42 (2d Cir. 1995) ("If she were the beneficiary of such a trust, then she would be 'the equitable owner' of those funds") (citing William F. Fratcher, *Scott on Trust*, § 12.1 (4th ed. 1987)).

11

## CONCLUSION

For the foregoing reasons, this Court should deny Appellees' Motion to Vacate the Stay.

Dated:  New York, New York
        October 25, 2013

                        Respectfully submitted,

                        WOLLMUTH MAHER & DEUTSCH LLP

                        By:  /s/ William F. Dahill
                             William F. Dahill
                             Vincent T. Chang

                        500 Fifth Avenue
                        New York, New York 10110
                        (212) 382-3300
                        wdahill@wmd-law.com
                        vchang@wmd-law.com

                        *Attorneys for Fintech Advisory Inc.*