# IN THE UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

| | |
|---|---|
| NML CAPITAL, LTD., AURELIUS CAPITAL MASTER, LTD., ACP MASTER, LTD., BLUE ANGEL CAPITAL I LLC, AURELIUS OPPORTUNITIES FUND II, LLC, PABLO ALBERTO VARELA, LILA INES BURGUENO, MIRTA SUSANA DIEGUEZ, MARIA EVANGELINA CARBALLO, LEANDRO DANIEL POMILIO, SUSANA AZQUERRETA, CARMEN IRMA LAVORATO, CESAR RUBEN VAZQUEZ, NORMA HAYDEE GINES, MARTA AZUCENA VAZQUEZ, OLIFANT FUND, LTD., <br><br>*Plaintiffs-Appellees*, <br><br>v. <br><br>THE REPUBLIC OF ARGENTINA, <br><br>*Defendant-Appellant,* <br><br>BANK OF NEW YORK MELLON, as Indenture Trustee, EXCHANGE BONDHOLDER GROUP, FINTECH ADVISORY INC., <br><br>*Non-Party Appellants,* <br><br>EURO BONDHOLDERS, ICE CANYON LLC <br><br>*Intervenors*. | **Nos. 12-105-cv (L),** 12-109-cv (CON), 12-111-cv (CON), 12-157-cv (CON), 12-158-cv (CON), 12-163-cv (CON), 12-164-cv (CON), 12-170-cv (CON), 12-176-cv (CON), 12-185-cv (CON), 12-189-cv (CON), 12-214-cv (CON), 12-909-cv (CON), 12-914-cv (CON), 12-916-cv (CON), 12-919-cv (CON), 12-920-cv (CON), 12-923-cv (CON), 12-924-cv (CON), 12-926-cv (CON), 12-939-cv (CON), 12-943-cv (CON), 12-951-cv (CON), 12-968-cv (CON), 12-971-cv (CON), 12-4694-cv (CON), 12-4829 (CON), 12-4865-cv (CON) |

## EURO BONDHOLDERS' OPPOSITION
## TO APPELLEES' MOTION TO VACATE THE STAY

**LATHAM & WATKINS LLP**
Christopher J. Clark
Craig A. Batchelor
885 Third Avenue
New York, New York 10022
Tel.: (212) 906-1200

*Attorneys for the Euro Bondholders*

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ...................................................................................1

ARGUMENT .................................................................................................................3

I. THE REPUBLIC'S PETITION FOR *CERTIORARI* PRESENTS A SUBSTANTIAL QUESTION ..........................................................................3

II. APPELLEES HAVE NOT DEMONSTRATED THAT THERE IS NO LONGER GOOD CAUSE FOR A STAY. .................................................6

    A. There is No Evidence that the Republic is Planning to Evade the Injunction. ..................................................................................6

    B. Maintaining the Stay Will Not Harm Appellees, But Vacating the Stay Will Cause Irreparable Harm to the Republic and Others ..........................................................................................9

CONCLUSION ............................................................................................................11

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Atwood Turnkey Drilling, Inc. v. Petroleo Brasileiro, S.A.*,
  875 F.2d 1174 (5th Cir. 1989) ..................................................................................4

*Books v. City of Elkhart, Indiana*,
  239 F.3d 826 (7th Cir. 2001) ....................................................................................3

*Commodity Futures Trading Comm'n v. British Am. Commodity Options Corp.*,
  434 U.S. 1316 (1997) ................................................................................................3

*Great-West Life & Annuity Ins. Co. v. Knudson*,
  534 U.S. 204 (2002) ..................................................................................................4

*Janvey v. Libyan Inv. Auth.*,
  478 F. App'x 233 (5th Cir. 2012) .............................................................................4

*Mount Soledad Mem'l Ass'n v. Trunk*,
  132 S. Ct. 2535 (2012) ..............................................................................................5

*NML Capital, Ltd. v Republic of Argentina*,
  727 F.3d 230 (2d Cir. 2013) ............................................................................. passim

*Phoenix Consulting Inc. v. Republic of Angola*,
  172 F.3d 920 (D.C. Cir. 1998) ..................................................................................4

## OTHER AUTHORITIES

E. Gressman, K. Geller, S. Shapiro, T. Bishop, & E. Hartnett, Supreme Court
  Practice 280 (9th ed. 2007) .......................................................................................5

Foreign Sovereign Immunities Act of 1976 .............................................................4

## RULES

Fed. R. App. P. 41(d)(2)(A) ......................................................................................3

Non-Party Intervenors Euro Bondholders submit this opposition to Appellees' motion to vacate the stay.

**PRELIMINARY STATEMENT**

On August 23, 2013, this Court affirmed the district court's injunctions that enjoin the Republic of Argentina (the "Republic") from paying its Exchange Bondholders unless it concurrently pays the holdout bondholders, which include Appellees. In that same decision, this Court held—*sua sponte*—that "in view of the nature of the issues presented, we will stay enforcement of the injunctions pending resolution of a timely petition to the Supreme Court for a writ of *certiorari*." *NML Capital, Ltd. v Republic of Argentina*, 727 F.3d 230, 238 (2d Cir. 2013) (the "August 23 Decision").

Nothing has changed since August 23 that warrants vacatur of the stay. Although the Supreme Court denied the Republic's pre-judgment petition for a writ of *certiorari*, that decision was widely expected and has no bearing on the Republic's forthcoming petition that it will file in the next few months now that judgment has been entered. Moreover, there has been no change in circumstances to disturb this Court's determination that good cause exists for a stay. In fact, since the August 23 Decision, the Republic has exhibited good faith by continuing to engage in the appellate process and by lifting the "Lock Law" and reopening the 2010 exchange to the holdouts in an effort to resolve this case.

1

Appellees now urge this Court to vacate its own stay based solely on a vague remark in one of President Kirchner's speeches that Appellees claim indicates that the Republic intends to evade the district court's March 5, 2012 order (the "Anti-Evasion Order") during the stay by changing the payment process on its Exchange Bonds.  The Republic, however, has since reiterated to the district court that it has "no plans" to violate the Anti-Evasion Order, and there is no evidence that the Republic is engaged in a plan to do so.  In any event, this Court is well-aware of the Republic's prior statements regarding whether it will comply with court orders—and specifically noted some of those statements *before* issuing the stay.

Litigation concerning the Republic's 2001 default has been going on for over ten years, involves billions of dollars of securities held around the world, raises significant issues related to sovereign immunity and the global economy, and could lead to the Republic defaulting on its debt.  In a few short months, the Republic will file its final petition for a writ of *certiorari* and the Supreme Court will decide whether to hear this case.  One way or another, this case will end in the very near future, and this Court should keep the stay in place to allow for an orderly resolution of the case.  Appellees cannot show how they will be harmed by the continuation of the stay, but lifting it at the eleventh hour could have dire consequences, not only for the Republic, but also for the Exchange Bondholders

2

that hold billions of dollars of the Republic's debt.  Appellees' motion to vacate the stay should be denied.

## ARGUMENT

A stay pending the filing of a petition for a writ of *certiorari* should be granted where "the petition will present a substantial question and there is good cause for a stay."  *Books v. City of Elkhart, Indiana*, 239 F.3d 826, 827 (7th Cir. 2001) (citing Fed. R. App. P. 41(d)(2)(A)).  Once a Court of Appeals has granted a stay, it should not be vacated unless the Court abused its discretion.  *See Commodity Futures Trading Comm'n v. British Am. Commodity Options Corp.*, 434 U.S. 1316, 1319 (1997) (Marshall, J., in chambers) ("Since the Court of Appeals was quite familiar with this case, having rendered a thorough decision on the merits, its determination that stays were warranted is deserving of great weight, and should be overturned only if the court can be said to have abused its discretion.").

### I. THE REPUBLIC'S PETITION FOR *CERTIORARI* PRESENTS A SUBSTANTIAL QUESTION

In the August 23 Decision, this Court held that the stay was warranted "in view of the nature of the issues presented."  August 23 Decision, 727 F.3d at 238.  In other words, this Court recognized that the Republic's petition for a writ of *certiorari* presents a substantial question, and thus stayed the injunctions until the Supreme Court can decide whether to hear the case.  That is entirely correct.

There are many reasons why it is likely that the Supreme Court will grant *certiorari* and reverse the injunctions. For example, this Court's decisions have created a circuit split with the Fifth and D.C. Circuits regarding whether courts can use an injunction to achieve what it cannot through attachment under the Foreign Sovereign Immunities Act of 1976 ("FSIA").[1] Moreover, the injunctions conflict with clear Supreme Court precedent that equitable relief is not available to compel a contractual obligation to pay money,[2] s*ee Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210-11 (2002), and, as the Euro Bondholders have repeatedly argued, improperly enjoin foreign entities from fulfilling foreign legal obligations on foreign soil. This case also warrants review by the Supreme Court

---

[1]     *See Janvey v. Libyan Inv. Auth.*, 478 F. App'x 233, 236 (5th Cir. 2012) (holding that "the FSIA's prohibition on 'attachment[s]' of property belonging to a foreign sovereign prevented the district court from entering a preliminary injunction"); *Atwood Turnkey Drilling, Inc. v. Petroleo Brasileiro, S.A.*, 875 F.2d 1174, 1177 (5th Cir. 1989) (holding that property is immune under the FSIA where "the purpose of [an] injunction is to secure the payment of a judgment"); *Phoenix Consulting Inc. v. Republic of Angola*, 172 F.3d 920, at *1 (D.C. Cir. 1998) (affirming denial of preliminary injunction because it would have been "in effect a prejudgment attachment in violation of the [FSIA]").

[2]     This Court held that injunctive relief was appropriate here because "plaintiffs have no adequate remedy at law." August 23 Decision, 727 F.3d at 241. Recent developments, however, have illustrated that is not true. At a hearing on September 25, 2013, counsel for NML stated that plaintiffs "may be able to have access to $40 billion" in an account held by Banco Central de la Republica Argentina ("BRCA") if they can show that it is an alter ego of the Republic, and the district court then denied BCRA's motion to dismiss. *See* Declaration of Craig A. Batchelor ("Batchelor Decl."), Ex. A at 11, 33.

because it threatens future sovereign debt restructurings—a concern that has been voiced numerous times by the United States and others.

Appellees argue that the likelihood of the Supreme Court granting *certiorari* has now decreased because the Supreme Court recently denied the Republic's pre-judgment petition for a writ of *certiorari*. App. Br. at 17-18. That is incorrect. This Court specifically noted that the Republic filed its first petition "notwithstanding that . . . no final order had yet issued in this case," and issued the stay pending "a *timely* petition to the Supreme Court." August 23 Decision, 727 F.3d at 238 and n.6 (emphasis added). It is not uncommon for the Supreme Court to deny petitions for a writ of *certiorari* made before final judgment has been rendered, and such denials do not amount to a ruling on the merits. *See, e.g., Mount Soledad Mem'l Ass'n v. Trunk*, 132 S. Ct. 2535, 2536 (2012) (denying interlocutory petition before final judgment); E. Gressman, K. Geller, S. Shapiro, T. Bishop, & E. Hartnett, Supreme Court Practice 280 (9th ed. 2007) (noting that the Supreme Court ordinarily should not issue a writ of *certiorari* on an interlocutory order). As *Reuters* aptly noted when the first petition was denied: "Considering that Argentina can make all the same legal points in its next petition to the Supreme Court as it did in the one rejected on Monday, local analysts said it was reasonable that the high court was reluctant to enter the legal imbroglio while lower court appeals are still unresolved." Batchelor Decl Ex. B.

This Court found that the "nature of the issues presented" in this case warranted a stay. The Supreme Court's denial of the Republic's first petition does not affect that finding.

## II.   APPELLEES HAVE NOT DEMONSTRATED THAT THERE IS NO LONGER GOOD CAUSE FOR A STAY.

### A.   There is No Evidence that the Republic is Planning to Evade the Injunction.

In its August 23 Decision, this Court found good cause to issue the stay, even with full awareness of the Republic's past statements regarding compliance with court orders. Prior to issuing the stay, this Court noted that the Republic stated that it would not "'voluntarily obey' the district court's injunctions, even if those injunctions were upheld by this Court . . . [and that] Argentina's official have publicly and repeatedly announced their intention to defy any rulings of this Court and the district court with which they disagree." August 23 Decision, 727 F.3d at 238. Yet almost immediately after recounting those statements, this Court issued the stay. *Id*.

Appellees contend that one of President Kirchner's recent remarks in a speech alters this Court's analysis of whether good cause exists for the stay. Appellees are wrong. The statement made by President Kirchner is too vague and unspecified to indicate that the Republic is engaged in any kind of plan to violate the Anti-Evasion Order, and the Republic has subsequently disavowed that it is

6

working on such a plan.³ At most, that statement is merely equivalent to the Republic's prior statements—that this Court identified, and discounted, when issuing the stay. There was nothing in President Kirchner's speech that shifts the calculus of whether good cause exists for a stay.

Moreover, Appellees fail to note that President Kirchner's remark was made during a time when there was some uncertainty regarding whether the so-called "Anti-Evasion Order" was still in effect. That order states that "the Republic shall not *during the pendency of the appeal to the Second Circuit* take any action to evade the directives of [the injunctions], . . . including without limitation, altering or amending the payment processes or specific transfer mechanisms by which it makes payments on the Exchange Bonds." Batchelor Decl. Ex. C at ¶ 2 (emphasis added). After the August 23 Decision, there was some ambiguity regarding whether the appeal was still "pending" in this Court and thus the Anti-Evasion Order was in effect. That is why Appellees sought a declaration from the district

---

³    Appellees claim that the Republic's plan is to "reroute Exchange Bond payments through new agents beyond the jurisdiction of the U.S. Courts," which apparently would allow the Republic to evade the injunction. App. Br. at 15. Of course, as the Euro Bondholders have argued repeatedly in this appeal, *payments on the Republic's Euro Bonds are already made entirely outside of the U.S. through foreign entities*. Appellees have apparently now conceded that the injunctions should not apply to payments made entirely through agents outside of the U.S., which means that the injunctions should not apply to the Euro Bonds.

7

court that the Anti-Evasion Order "has been and remains continuously in full force and effect." *See* Batchelor Decl. Ex. D at ¶ 1.

Appellees have obtained the relief they sought from the district court, which ordered that the Anti-Evasion Order remain in effect and that implementation of certain plans to change the payment process on the bonds would violate that order.[4] *See id*. The district court's October 3, 2013 order, coupled with the Republic's subsequent statement that it has "no plans" to violate the Anti-Evasion Order, fully protects Appellees and undermines their arguments for vacating the stay. The Republic is prohibited from changing the payment process on the Exchange Bonds while its petition for a writ of *certiorari* is considered, and it has clearly stated that it has no plans to do that.

Indeed, it would be foolish for the Republic to violate the Anti-Evasion Order, because doing so likely would destroy any chance that the Supreme Court would hear its appeal, much less decide it in the Republic's favor. The Republic's recent actions, however, demonstrate that it is acting in good faith. For example, the Republic continues to seek appellate relief, despite its string of unfavorable results. On September 6, 2013, the Republic filed a petition for rehearing and rehearing en banc in this Court, and it has publicly stated that it will pursue its

---

[4]     Because Appellees sought this relief surreptitiously by submitting undocketed letters to the district court, interested third parties had no notice and no chance to intervene.

appeal to the Supreme Court. According to press reports, the Republic recently retained former Solicitor General Paul Clement, one of the most well-regarded Supreme Court practitioners in the country, to work on its Supreme Court appeal. Batchelor Decl. Ex. E. The Republic would not be devoting its time and resources to the appellate process if it was planning simultaneously to undermine those efforts by violating the district court's orders.

The Republic also has demonstrated its good faith by passing a law to lift the so-called "Lock Law" and indefinitely reopen its 2010 exchange to the holdout bondholders, including Appellees. Batchelor Decl. Ex. F. That decision shows the Republic's willingness to seek consensual resolution of holdouts' claims and is "part of Argentina's less defiant approach to holdout creditors." *Id*.

### B. Maintaining the Stay Will Not Harm Appellees, But Vacating the Stay Will Cause Irreparable Harm to the Republic and Others

According to Appellees, the only potential harm caused by the stay is that it allegedly gives the Republic more time to "implement its plot." App. Br. at 15. That is not the type of concrete harm necessary to lift the stay. Moreover, the Anti-Evasion Order has been in place since March 2012. The Republic has obeyed the order since that time and has stated that it will continue to do so. If the Republic actually takes steps to violate the Anti-Evasion Order, Appellees can move this Court to vacate the stay and seek relief from the district court at that time. Maintaining the stay for a few more months will not harm Appellees at all.

9

On the other hand, vacating the stay will subject the Republic and certain third parties to irreparable harm. As an initial matter, the Republic, the Exchange Bondholder Group, and Fintech have each filed motions for rehearing and rehearing en banc that should be resolved before the injunctions go into effect. Also, many third parties, including the Euro Bondholders, challenged on appeal the application of the injunctions to third parties. This Court rejected those arguments, in part, on the ground that they could be raised in the district court at the appropriate time. *See* August 23 Decision, 727 F.3d at 242-44. If the stay is vacated, the district court will be flooded with applications for clarification from third parties while the Supreme Court is simultaneously considering the case. That could lead to inconsistent rulings and disrupt the orderly adjudication of the case. Finally, vacating the stay could lead to the Republic defaulting on its $24 billion of dollars of Exchange Bonds, harming the citizens of that country, wiping out the value of investors' holdings, and sending shockwaves around the global economy. All of these potential harms weigh in favor of maintaining the stay.

## CONCLUSION

For the foregoing reasons, the Euro Bondholders respectfully request that this Court deny Appellees' Motion to Vacate the Stay.

October 25, 2013                    Respectfully submitted,

                                              By: /s/ Christopher J. Clark
                                                      **LATHAM & WATKINS LLP**
                                                        Christopher J. Clark
                                                        Craig A. Batchelor
                                                        885 Third Avenue
                                                        New York, NY 10022
                                                        Tel.: (212) 906-1200

                                                        *Attorneys for the Euro Bondholders*